IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

BENN SORENSEN,

                               Plaintiff,

        vs.                              Civil Action No.
                                              6:04-CV-0321(DNH/DEP)

JO ANNE B. BARNHART, Commissioner
of Social Security,

                             Defendant.

_____

APPEARANCES:                      OF COUNSEL:

FOR PLAINTIFF:

LACKMAN, GORTON LAW FIRM     PETER A. GORTON, ESQ.
P.O. Box 89
1500 East Main Street
Endicott, New York 13761-0089

FOR DEFENDANT:

HON. GLENN T. SUDDABY        WILLIAM H. PEASE, ESQ.
United States Attorney for the    Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

OFFICE OF GENERAL COUNSEL   BARBARA L. SPIVAK, ESQ.
Social Security Administration    Chief Counsel, Region II
26 Federal Plaza
New York, NY 10278             PETER S. KRYNSKI, ESQ.
                                 Assistant Regional Counsel

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

Plaintiff Benn Sorensen, who suffers from the residual effects of an automobile accident which resulted in fractures of his right femur and right ankle, has commenced this proceeding pursuant to section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), challenging the Commissioner's denial of his application for disability insurance and supplemental security income ("SSI") benefits.  In support of his challenge plaintiff asserts that the lynchpin of the finding of no disability by the Administrative Law Judge ("ALJ") who decided the matter, to the effect that despite his injuries he retains the capacity to perform a full range of sedentary work, is not supported by substantial evidence and results from the ALJ's improper rejection of contrary opinions from his treating physicians and the failure to properly assess both his credibility and the side effects associated with his medication.  Plaintiff seeks reversal of the Commissioner's determination and a remand to the agency, with a directed finding of disability, for the limited purpose of calculating benefits.

Having thoroughly reviewed the administrative record upon which the Commissioner's determination was based, considered in the light of

plaintiff's arguments, I find that the conclusion that the plaintiff was not disabled at the relevant times resulted from application of proper legal principles and is supported by substantial evidence.  Accordingly, I recommend that the Commissioner's determination be affirmed.

I.   BACKGROUND

Plaintiff was born on June 13, 1975.  Administrative Transcript at p. 45.[1]  At the time of administrative hearing in this matter, he was twenty-eight years old.  AT 45.  Plaintiff is not married, and resides in Greene, New York.  AT 217, 219.

Plaintiff is a high school graduate, and has completed four semesters of course work, principally in the field of business, at the Broome Community College, located in Binghamton, New York.  AT 218. Plaintiff last worked as the head of maintenance at a community corrections center, or halfway house, a position which he held for four years.  AT 219-20.  Prior to becoming employed there, plaintiff was employed in various construction settings, primarily commercial and all involving heavy lifting, and before that as a cook, a position which required both lifting and that he be on his feet virtually all day.  AT 220-21.

---

[1]      Portions of the administrative transcript, Dkt. No. 3, filed by the Commissioner together with her answer in this matter, will be cited herein as"AT __."

Plaintiff was involved in a serious motor vehicle accident on March 22, 2001.  AT 84, 109, 219.  As a result of that accident he suffered principally from a comminuted fracture of the right femur, a right second metacarpal fracture, and a right talus calcaneus fracture of the right ankle. AT 84, 85, 99, 109.  Plaintiff has not worked since his accident.  AT 219.

As a result of his injuries plaintiff underwent two separate surgeries, both performed by Dr. Michael McClure at United Health Services Hospital, located in Johnson City, New York.  AT 85-86, 99-100.  In the first, the right femur fracture was remedied through open reduction, with internal fixation using an intramedullary rod.  AT 85-86.  The second operation, which was performed on April 4, 2001, addressed the injuries to plaintiff's right ankle, and included open reduction and internal fixation with synthetic bone grafting of the fracture of the lateral wall of the talus, accompanied by repair of the lateral ligaments.  AT 99-100.

Following his surgeries, plaintiff was treated at varying intervals by medical personnel employed at Orthopedic Associates, located in Binghamton, New York.  AT 129-44.  The last entry in plaintiff's medical notes from Orthopedic Associates, dated January 7, 2002, reports that "[p]atient is doing very well.  He has full range of motion of the hip.  Leg

-4-

really feels fine.  He walks without a cane at this point."  AT 129.  The professional who examined the plaintiff on that date recorded an impression of "[h]ealing fractured femur" and concluded with a note that plaintiff should engage in "[a]ctivity as tolerated [and r]eturn here if there is [sic] any recurrent problems."  *Id.*

Plaintiff was also treated for his injuries by Dr. Drake Lamen, his primary treating physician.  AT 145-59, 181-200.  In an entry made following a visit by plaintiff on January 16, 2002, Dr. Lamen noted that through the use of Vicodin plaintiff "feels that he has adequate control of the pain" and while he "walks with a slight limp" he "generally seems comfortable."  AT 147.  During that visit plaintiff reported to Dr. Lamen that he had been advised by his orthopedic specialist he could discontinue the use of a cane and gradually increase his activities, though he should "avoid any contact sport activities for at least six months."  *Id.*

In addition to impressions recorded by these treating sources, medical opinions were rendered regarding plaintiff's condition by both examining and non-examining consultants retained by the agency.  Based upon an examination conducted on March 23, 2002, Dr. Michael R. Obrecht, an osteopath affiliated with Industrial Medicine Associates, P.C.

in Binghamton, New York, discerned the presence of only a moderate restriction in plaintiff's ability to carry, lift, push and pull as a result of his fractures, concluding that "[h]e would probably be best served by restricting heavy physical activities and seeking a desk-job employment." AT 162-63.  Dr. Obrecht further noted that plaintiff might experience some "mild limitation for prolonged standing and walking", but that his overall muscular strength was "good".  AT 163.

An assessment of plaintiff's residual functional capacity ("RFC") was completed on April 23, 2002 by Dr. R. Gauthier, based upon his review of plaintiff's medical records.  AT 165-72.  In that RFC assessment Dr. Gauthier opined, *inter alia*, that plaintiff is capable of lifting ten pounds occasionally, and less than ten pounds frequently; can stand and/or walk for at least two hours in an eight hour work day; and is capable of sitting for six hours in an eight hour work day, with normal breaks.  AT 166.  No other limitations, including with respect to pushing and/or pulling, were noted by Dr. Gauthier in his assessment.  *Id.*

II.     PROCEDURAL HISTORY

     A.     Proceedings Before The Agency

Plaintiff applied for disability insurance and SSI benefits in

December of 2001.  AT 45-47, 202-04.  Those applications were denied
on April 30, 2002.  AT 17, 34-39.  At plaintiff's request, a hearing was
conducted before ALJ Alfred J. Costanzo on June 19, 2003 to address the
denial of plaintiff's application for disability insurance and SSI benefits.  AT
214-39.  Following that hearing, at which plaintiff was represented by
counsel, ALJ Constanzo issued a decision dated July 21, 2003 upholding
the denial.  AT 17-23.

Applying the now familiar, five step sequential analysis to the
plaintiff's claim of disability, in his decision ALJ Constanzo first found that
claimant had not engaged in substantial gainful activity since disability
onset, and that he suffers from medical impairments which are sufficiently
severe to restrict or impair his ability to perform basic work activities, but
do not meet or equal any of the presumptively disabling conditions listed in
the Commissioner's regulations.  AT 18-19.  *See* 20 C.F.R. Pt. 404, Subpt.
P, App. 1.  ALJ Constanzo next examined the record in order to measure
plaintiff's RFC, finding that he retains the ability to perform a full range of
sedentary work.  AT 19-21.  In arriving at that conclusion the ALJ rejected
plaintiff's assertions to the contrary, based upon the extent of his daily
activities, including his attendance at college, as well as the opinions of

Dr. Drake Lamen, plaintiff's treating physician, as unsupported and inconsistent with his own notes. *Id.*

Applying the sedentary work RFC finding, ALJ Costanzo next concluded that plaintiff is unable to perform the duties of any of his past relevant work, and thus proceeded to step five of the evaluation, noting the shifting of burdens to the Commissioner at that juncture. AT 21. Applying the medical-vocational guidelines set forth in the governing regulations, 20 C.F.R. Pt. 404, Subpt. P. App. 2 (the "grid"), as a framework, and factoring in the relevant criteria associated with the plaintiff's circumstances, the ALJ concluded that a finding of not disabled was warranted. AT 21-22. The ALJ's opinion became a final determination of the agency when, on March 11, 2004, the Social Security Administration Appeals Council denied plaintiff's request for review of that decision. AT 5-7.

B.     This Action

Plaintiff commenced this action on March 24, 2004. Dkt. No. 1. Issue was thereafter joined by the Commissioner's filing of an answer, accompanied by an administrative transcript of the proceedings and evidence before the agency, on June 2, 2004. Dkt. Nos. 2, 3. With the

filing of plaintiff's brief on September 15, 2004, Dkt. No. 5, and that on

behalf of the Commissioner on November 23, 2004, Dkt. No. 9, and a

reply brief subsequently filed by the plaintiff on December 6, 2004, Dkt.

No. 10, the matter is now ripe for determination and has been referred to

me for the issuance of a report and recommendation, pursuant to 28

U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule

72.3(d).  *See also* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

    A.   Scope Of Review

A court's review under 42 U.S.C. § 405(g) of a final decision by the

Commissioner is limited; that review requires a determination of whether

the correct legal standards were applied, and whether the decision is

supported by substantial evidence.  *Veino v. Barnhart*, 312 F.3d 578, 586

(2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal

v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F.

Supp.2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen*,

817 F.2d 983, 985 (2d Cir. 1987)).  Where there is reasonable doubt as to

whether the Commissioner applied the proper legal standards, her

decision should not be affirmed even though the ultimate conclusion

reached is arguably supported by substantial evidence.  *Martone*, 70 F. Supp.2d at 148.  If, however, the correct legal standards have been applied and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision should withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact.  *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel*, 13 F. Supp.2d 312, 314 (N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217 (1938)).  To be substantial, there must be "'more than a mere scintilla'" of evidence scattered throughout the administrative record.  *Id.*; *Martone*, 70 F. Supp.2d at 148 (citing *Richardson*).  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the

substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 715 S. Ct. 456, 464 (1951)).

When a reviewing court concludes that incorrect legal standards have been applied, and/or that substantial evidence does not support the agency's determination, the agency's decision should be reversed. 42 U.S.C. § 405(g); *see Martone*, 70 F. Supp.2d at 148. In such a case the court may remand the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to develop a full and fair record or to explain his or her reasoning. *Martone*, 70 F. Supp.2d at 148 (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)). A remand pursuant to sentence six of section 405(g) is warranted if new, non-cumulative evidence proffered to the district court should be considered at the agency level. *See Lisa v. Secretary of Dep't of Health & Human Servs. of U.S.*, 940 F.2d 40, 43 (2d Cir. 1991). Reversal without remand, while unusual, is appropriate when there is "persuasive proof of disability" in the record and it would serve no useful purpose to remand the matter for further proceedings before the agency. *Parker*, 626 F.2d at 235; *Simmons v. United States R.R. Retirement Bd.*, 982 F.2d 49, 57 (2d

Cir. 1992); *Carroll v. Secretary of Health & Human Servs.*, 705 F.2d 638, 644 (2d Cir. 1983).

B.   Disability Determination: The Five Step Evaluation Process

The Social Security Act defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.] "  42 U.S.C. § 423(d)(1)(A).   In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the

claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§

404.1520(b), 416.920(b).  If the claimant is not gainfully employed, then

the second step involves an examination of whether the claimant has a

severe impairment or combination of impairments which significantly

restricts his or her physical or mental ability to perform basic work

activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer

from such an impairment, the agency must next determine whether it

meets or equals an impairment listed in Appendix 1 of the regulations.  *Id.*

§§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so,

then the claimant is "presumptively disabled".  *Martone*, 70 F. Supp.2d at

149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20

C.F.R. §§ 404.1520(d), 416.920(d).

        If the claimant is not presumptively disabled, step four requires an

assessment of whether the claimant's RFC precludes the performance of

his or her past relevant work.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If it

is determined that it does, then as a final matter the agency must examine

whether the claimant can do any other work.  *Id.* §§ 404.1520(f),

416.920(f).

        The burden of showing that the claimant cannot perform past work

lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996);

*Ferraris*, 728 F.2d at 584.  Once that burden has been met, however, it

becomes incumbent upon the agency to prove that the claimant is capable

of performing other work.  *Perez*, 77 F.3d at 46.  In deciding whether that

burden has been met, the ALJ should consider the claimant's RFC, age,

education, past work experience, and transferability of skills.  *Ferraris*, 728

F.2d at 585; *Martone*, 70 F. Supp.2d at 150.

>      C.     The Evidence In This Case

>               1.     RFC Finding

Pivotal to the finding of no disability is the ALJ's conclusion that

notwithstanding his injuries, plaintiff retains the ability to perform sedentary

work.[2]  Plaintiff contends that this sedentary work finding is not supported

_____

[2]        Sedentary work is defined by regulation as follows:

> Sedentary work involves lifting no more than 10 pounds at
> a time and occasionally lifting or carrying articles like docket
> files, ledgers, and small tools.  Although a sedentary job is
> defined as one which involves sitting, a certain amount of
> walking and standing is often necessary in carrying out job
> duties.  Jobs are sedentary if walking and standing are
> required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).  In addition, a subsequent ruling has clarified that sedentary
work generally involves periods of standing or walking for a total of two hours in an
eight hour work day, with sitting up to a total of approximately six hours in a similar
period.  *See* Social Security Ruling 83-10.

by substantial evidence in the record.

A claimant's RFC represents a finding of the range of tasks he or she is capable of performing notwithstanding the impairments at issue. 20 C.F.R. § 404.1545(a). An RFC determination is informed by consideration of a claimant's physical abilities, mental abilities, symptomology, including pain, and other limitations which could interfere with work activities on a regular and continuing basis. *Id.*; *Martone*, 70 F.Supp.2d at 150.

To properly ascertain a claimant's RFC, an ALJ must therefore assess plaintiff's exertional capabilities, addressing his or her ability to sit, stand, walk, lift, carry, push and pull. 20 C.F.R. § 404.1569a. Nonexertional limitations or impairments, including impairments which result in postural and manipulative limitations, must also be considered. 20 C.F.R. § 404.1569a; *see also* 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e). When making an RFC determination, an ALJ must specify those functions which the claimant is capable of performing; conclusory statements concerning his or her capabilities, however, will not suffice. *Martone*, 70 F.Supp.2d at 150 (citing *Ferraris*, 728 F.2d at 587). An administrative RFC finding can withstand judicial scrutiny only if there is substantial evidence in the record to support each requirement listed in

the regulations. *Martone*, 70 F.Supp.2d at 150 (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Sobolewski v. Apfel*, 985 F.Supp. 300, 309-10 (E.D.N.Y. 1997).

The ALJ's finding of plaintiff's ability to perform sedentary work garners much support from the record. A review of Dr. McClure's records regarding treatment of the plaintiff, following his two operations, reveals a steady pattern of improvement and healing. On November 7, 2001, for example, Dr. McClure reported that plaintiff's ankle and hip were doing well, with full range of motion and no tenderness. AT 130. X-rays taken in January, 2002 confirmed progressive healing of plaintiff's femur. AT 129. At that time plaintiff reported doing well and experiencing a full range of motion in the hip. *Id.* Plaintiff also reported that his leg felt fine, and he was able to walk without a cane. *Id.* Later that month plaintiff was advised to discontinue the use of his cane and gradually increase his activities, the sole restriction being that he avoid contact sports for a period of six months. AT 147.

The ALJ's sedentary work finding is also supported by the results of a consultative examination conducted by Dr. Michael Obrecht on March 23, 2002. AT 160-63. Based upon plaintiff's statements regarding his

-16-

activities and an examination of the plaintiff, Dr. Obrecht concluded that at the time Sorensen experienced only mild difficulty with prolonged walking and standing, and as well in carrying, lifting, pushing and pulling, though noting that he should limit heavy activity.  AT 163.  Dr. Obrecht's findings were substantiated by those of Dr. Ronald Gauthier who, based upon a review of the plaintiff's medical records, opined on April 23, 2002 that plaintiff could lift up to ten pounds and could stand and/or walk for two hours and stand for up to six in an eight hour day, noting no significant limitations in other areas.  AT 165-72.

These findings of both treating and non-treating medical sources lend support to the ALJ's RFC findings, which are thus supported by substantial evidence.

### 2.    Credibility

Plaintiff also asserts that in finding no disability the ALJ improperly discounted his subjective complaints and claims regarding his limitations, and that the rejection is neither supported by the evidence in the record nor properly explained.

An ALJ must take into account subjective complaints of pain in making the five step disability analysis.  20 C.F.R. §§ 404.1529(a), (d),

-17-

416.929(a), (d).  When examining the issue of pain, however, the ALJ is not required to blindly accept the subjective testimony of a claimant. *Marcus*, 615 F.2d at 27; *Martone*, 70 F. Supp.2d at 151 (citing *Marcus*). Rather, an ALJ retains the discretion to evaluate a claimant's subjective testimony, including testimony concerning pain*.  See Mimms v. Heckler*, 750 F.2d 180, 185-86 (2d Cir. 1984).  In deciding how to exercise that discretion the ALJ must consider a variety of factors which ordinarily would be relevant on the issue of credibility in any context, including the claimant's credibility, his or her motivation, and the medical evidence in the record.  *See Sweatman v. Callahan*, No. 96-CV-1966, 1998 WL 59461, at *5 (N.D.N.Y. Feb. 11, 1998) (Pooler, D.J. and Smith, M.J.) (citing *Marcus*, 615 F.2d at 27-28)).  In doing so, the ALJ must reach an independent judgment concerning the actual extent of pain suffered and its impact upon the claimant's ability to work.  *Id.*

When such testimony is consistent with and supported by objective clinical evidence demonstrating that claimant has a medical impairment which one could reasonably anticipate would produce such pain, it is entitled to considerable weight.[3]  *Barnett*, 13 F. Supp.2d at 316; *see also*

---

[3]      In the Act, Congress has specified that a claimant will not be viewed as disabled unless he or she supplies medical or other evidence establishing the

20 C.F.R. §§ 404.1529(a), 416.929(a).  If the claimant's testimony concerning the intensity, persistence or functional limitations associated with his or her pain is not fully supported by clinical evidence, however, then the ALJ must consider additional factors in order to assess that testimony, including: 1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi).

After considering plaintiff's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject claimant's subjective testimony.  *Martone*, 70 F. Supp.2d at 151; *see also* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).  If such testimony is rejected, however, the ALJ must explicitly state the basis for doing so with sufficient particularity to enable a reviewing court to determine whether those reasons for disbelief were legitimate, and whether the determination is supported by substantial evidence.  *Martone*, 70 F. Supp.2d at 151 (citing *Brandon v. Bowen,* 666 F. Supp. 604, 608

---

existence of a medical impairment which would reasonably be expected to produce the pain or other symptoms alleged.  42 U.S.C. § 423(d)(5)(A).

(S.D.N.Y. 1987)).  Where the ALJ's findings are supported by substantial

evidence, the decision to discount subjective testimony may not be

disturbed on court review.  *Aponte v. Secretary, Dep't of Health & Human

Servs. of U.S.,* 728 F.2d 588, 591 (2d Cir. 1984).

It may be, as plaintiff asserts, that he does suffer from some degree

of discomfort as a result of his back and leg condition.  The fact that he

suffers from discomfort, however, does not automatically qualify him as

disabled, since "disability requires more than mere inability to work without

pain."  *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983).

During the hearing plaintiff testified to the effects experienced as a

result of his injuries, including primarily the pain suffered from it.  Plaintiff

has described the pain as being most prominent in his back, as well as the

upper right hips and upper right thigh, although he does experience some

discomfort in both of his ankles.[4]  AT 222-24.  According to the plaintiff,

the pain begins in his back and radiates down the front of his thigh to his

knees.  *Id.*  Plaintiff also experiences occasional swelling in his thigh and

ankle.  AT 224.  While plaintiff is able to sit during class, he is required to

occasionally stand up and walk out to stretch.  AT 228-29.  Plaintiff also

---

[4]      In the past plaintiff also suffered from a broken left ankle as a result of
being struck by an automobile in October of 1994.  AT 144.

stated that he is required to lie down between five and six times per day

for between ten and thirty minutes each.  AT 234-35.  According to

Sorensen, as a result of one of his two medications, Vicodin, he

experiences adverse side effects including giddiness, nervousness, and

inability to sleep, and the medication adversely affects his concentration.

AT 232.

        To the extent that these complaints may be incompatible with a

finding of sedentary work, they were rejected by the ALJ as being

inconsistent with plaintiff's activities, and that rejection is supported by

substantial evidence.  Despite his injuries, plaintiff has been able to attend

college and carry a twelve credit load, and reports that he received three

Bs and a C during his last semester in college, adding that he had never

done so well in high school.  AT 218-19.  Plaintiff is able to navigate

around campus, although he does have a handicapped parking pass and

is required to use a cane when walking on uneven ground or long

distances where he is unable to rest.  AT 227-28.   For the plaintiff, a

typical day includes stretching and exercise, study before college, driving

to school, attending classes, driving home, performing housework,

studying after college, preparing and eating dinner, and watching

television.  AT 72.  Plaintiff lives by himself, and is able to shop, prepare simple meals, and perform daily housework and light cleaning, including washing dishes.  AT 72-76, 81, 161.  While plaintiff now asserts that he experiences a lack of concentration and other adverse side effects associated with his use of Vicodin, those limitations are not reflected either in the success which he has achieved in his schooling or in any reports of Dr. Lamen, his treating physician.

Based upon the foregoing, I find that the ALJ's rejection of plaintiff's subjective complaints of limitations that would be inconsistent with his ability to perform sedentary work is supported by substantial evidence.

### 3.    Treating Source

In arriving at his determination, the ALJ also rejected contrary opinions of plaintiff's treating physician, Dr. Lamen.  Among the opinions eschewed by the ALJ was Dr. Lamen's RFC finding, rendered on June 20, 2003 in response to a questionnaire from plaintiff's counsel, in which he stated that plaintiff would be required to rest for ten minutes each hour, and to lie down four to six times per day, and could sit for only a total of four hours in an eight hour work day, and only one hour at a time without interruption.  AT 197-200.  In that RFC assessment Dr. Lamen also

-22-

concluded that plaintiff is unable to lift one or more pounds.[5]  AT 200.

_____Ordinarily, the opinion of a treating physician is entitled to

considerable deference, provided that it is supported by medically

acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with other substantial evidence.[6]  *Veino*, 312 F.3d at 588;

*Barnett*, 13 F. Supp.2d at 316.  Such opinions are not controlling,

however, if contrary to other substantial evidence in the record.  *Veino*,

312 F.3d at 588.  Where conflicts arise in the form of contradictory

medical evidence, their resolution is properly entrusted to the

---

[5]     This assessment is inconsistent with even plaintiff's own testimony, in which he stated that he is able to lift and carry a backpack as well as other items such as groceries, provided that they are contained in plastic bags with handles or similar receptacles.  *See* AT 230.

[6]     The regulation which governs treating physicians provides:

> Generally, we give more weight to opinions from your treating sources . . . If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.   When we do not give the treating source's opinion controlling weight, we apply [various factors] in determining the weight to give the opinion.

20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

-23-

Commissioner.  *Id.*

In deciding what weight, if any, an ALJ should accord to medical opinions, he or she may consider a variety of factors including "[t]he duration of a patient-physician relationship, the reasoning accompanying the opinion, the opinion's consistency with other evidence, and the physician's specialization or lack thereof[.]"  See *Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993) (discussing 20 C.F.R. §§ 404.1527, 416.927).

When a treating physician's opinions are repudiated, the ALJ must provide reasons for the rejection.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  Failure to apply the appropriate legal standards for considering a treating physician's opinions is a proper basis for reversal and remand, as is the failure to provide reasons for rejection of his or her opinions.  *Johnson*, 817 F.2d at 985; *Barnett*, 13 F. Supp.2d at 316-17.

In his opinion ALJ Constanzo explained his rejection of Dr. Lamen's RFC questionnaire, noting that it was inconsistent with his own treating notes.  *See* AT 20.  ALJ Constanzo chose instead to rely upon the more expansive findings of Dr. Obrecht, who evaluated the plaintiff consultatively, as well as Dr. Gauthier, who reviewed his records.  The

ALJ was entitled to rely upon the results of those consultative evaluations,

which can provide substantial evidence supporting an ALJ's

determination. *Barringer v. Comm'r of Soc. Sec.*, 358 F.Supp.2d 67, 79

(N.D.N.Y. 2005) (Sharpe, J.).

IV.    SUMMARY AND RECOMMENDATION

While undeniably, plaintiff suffered serious injuries as a result of his

March, 2001 accident, the two operations performed to address those

injuries appear to have been successful and the healing process has

progressed to a point where he is able to attend college classes and care

for his needs, with marked success.  Although plaintiff is plainly unable to

return to his past relevant work, in light of the lifting and other exertional

requirements associated with those positions, by all accounts he is able to

perform in a sedentary setting.

Plaintiff's objection to the Commissioner's finding that he is capable

of performing sedentary work appears to center upon the claim that he is

unable to sit for prolonged periods of time.  It should be noted, however,

as the Second Circuit has observed, "[t]he regulations do not mandate

that all sedentary jobs in the United States require the worker to sit without

moving for six hours, trapped like a seat-belted passenger in the center

seat on a transcontinental flight." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004).

Based upon the totality of the record, including plaintiff's own testimony and reports from his treating sources, the Commissioner's finding that he retains the capability to perform a full range of sedentary work, and thus is not disabled, is supported by substantial evidence in the record.

Based upon the foregoing it is hereby

RECOMMENDED that defendants' motion for judgment on the pleadings be GRANTED, the Commissioner's finding of no disability AFFIRMED, and plaintiff's complaint DISMISSED in all respects.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court within ten (10) days.  FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roland v. Racette*, 984 F.2d 85 (2d Cir. 1993).

IT IS FURTHER ORDERED, that the Clerk of the Court serve a copy of this Report and Recommendation upon the parties electronically.

Dated:      April 5, 2006
            Syracuse, NY                         David E. Peebles
                                                 U.S. Magistrate Judge

G:\socialsecurity\sorensen.wpd

-27-